IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION

CLERKS OFFICE US DISTRICT COURT
AT ROANOKE, VA
FILED
December 19, 2025
LAURA A. AUSTIN, CLERK
BY: /s/ Erica Jones
   DEPUTY CLERK

| | |
|---|---|
| **ADEIRA CELEENE WRIGHT,** | ) |
| **Plaintiff,** | ) Civil Action No.: 7:25-cv-00898 |
| v. | ) |
| **VIRGINIA DEPARTMENT OF SOCIAL SERVICES, et al,** | ) By: Hon. Robert S. Ballou<br>) United States District Judge |
| **Defendants.** | ) |

## **MEMORANDUM OPINION**

Plaintiff Adeira Celeene Wright, proceeding *pro se*, claims to have seven children but apparently has lost her custodial rights as to several of the children. Wright has filed several petitions in state juvenile and domestic relations courts to have the children removed from their present living arrangements. She has also lodged several complaints with the Department of Social Services, elected officials, and the Department of Justice regarding the investigations conducted by the DSS. She has now filed a complaint in this court against the Virginia Department of Social Services[1], Lynette Jobe, supervisor at DSS in both her individual and official capacities, and unknown DSS workers[2] under 42 U.S.C. § 1983, alleging failure to protect her minor children from danger in violation of the First and Fourteenth Amendments. Dkt. 3. Wright has also filed several motions for immediate judicial review of her complaint (Dkt. 4), for a temporary restraining order and immediate protective custody of her children

---

[1] Wright's civil cover sheet also lists "Roanoke DSS" and "Bedford DSS" as defendants. As the Roanoke and Bedford divisions are branches of the Virginia Department of Social Services, they are collectively referred to as "DSS."

[2] Wright refers to unknown DSS worker as "John Doe" but also refers to her children's adoptive parents as "John and Jane Doe."

(Dkt. 5), to proceed in forma pauperis under 28 U.S.C. § 1915(a)(1) (Dkt. 7), for expedited review (Dkt. 9), and for immediate relief and evidentiary update (Dkt. 10). Because Wright asks the court to intervene in a child custody dispute and seeks to relitigate previous and current state court proceedings by direct appeal to a federal district court, this Court shall abstain from exercising jurisdiction in this case.

## I.     Background

Wright brings her claims under § 1983 for "Failure to Protect; State-Created Danger." Dkt. 3-16 at 1. Her complaint[3] alleges retaliation by the Department of Social Services against her children in violation of the First Amendment and insufficient due process under the Fourteenth Amendment. Dkt. 3 at 4. Specifically, Wright alleges that "defendants violated my constitutional rights and my children [sic] right's [sic] by acting with retaliation, denying due process, refusing forensic interviews, ignoring evidence of abuse, and failure to protect my children from ongoing danger." *Id*. She seeks a temporary restraining order "to protect my children from imminent and irreparable harm . . . the court to order immediate safety measures including independent forensic interviews, protection from DSS retaliation, neutral oversite [sic] of any contact involving my children" and generally that her children be placed with her or any other "neutral placement." *Id*. at 4–6.

The facts center around Wright's concern for the wellbeing of her minor children, who

---

[3] Courts in the Fourth Circuit frequently consider facts alleged by *pro se* plaintiffs in deciding a motion to dismiss, even if they are improperly alleged outside of the complaint. *Holley v. Combs*, 134 F.4th 142, 144 (4th Cir. 2025); *see also*, *Goines v. Valley Community Services Board*, 822 F.3d 159, 166 (4th Cir. 2016) (holding that courts may consider documents explicitly incorporated by reference or otherwise integral to the complaint). Therefore, I have liberally construed Wright's complaint to include the allegations contained in the motion for temporary restraining order and associated affidavit. Dkts. 5 and 6.

are apparently in the custody of their adoptive parents, John and Jane Doe.[4] Wright received custody of at least one minor child in 2023, and states variously that she has custody of "five biological children." Dkt. 3-5; Dkt. 6 at 3. The numerous exhibits Wright submitted with her complaint show that she has recently filed multiple complaints and requested that DSS investigate her children's situation. Wright seeks to change custody placements for the children removed from her care. Further, Wright recently filed in a state juvenile and domestic relations court "an emergency motion in the appropriate local court requesting immediate sibling visitation protections and appointment of a guardian ad litem." Dkt. 10 at 2.

      Wright first alleges in her federal complaint that the initial removal of her children after she reported a runaway child was improper because the presence of a DSS worker, who accompanied police to return the runaway child, was not disclosed. Dkt. 6 at 3 ("I opened the door out of compassion, not consent to a DSS investigation"). Since the removal of her children, Wright alleges that they have suffered extreme abuse at the hands of their adoptive parents, including "[p]hysical beatings, over thirty blows with a shoe, open-hand slaps, beating with spoons and objects, sexualized verbal aggression, a prior attempted drowning" and other abuses. Dkt. 5 at 1. Wright further claims that Jane and John Doe have retaliated against her children in response to her investigation of the abuse. *Id*. at 2 ("Children were punished after every disclosure"); Dkt. 3-14 at 2 ("Because of the children's fear of retaliation, I am worried that if I send the full videos and audio recordings without proper direction, they could end up being viewed by the adoptive mother and cause the children more harm"). Finally, Wright claims that the fact that the DSS worker assigned to her case lived nearby created a "disqualifying conflict

---

[4] Wright does not state facts explaining the custodial relationship with her children, the reasons for their initial removal, or whether she continues to have any parental rights of the children who are living with John and Jane Doe.

of interest" that "constitutes structural bias and violates Plaintiff's rights to due process under the Fourteenth Amendment." Dkt. 9 at 1; Dkt. 10 at 2.

Wright also brings claims against DSS for failure to adequately investigate abuse allegations. Specifically, she claims that "[a] structural conflict of interest within VDSS" inhibits her ability "to secure protection for endangered children." Dkt. 3-3 at 2. She also argues that her investigation has been improperly stymied, as "FOIA response demanded excessive redaction fees." Dkt. 5 at 2; Dkt. 3-12. Wright seeks to enjoin DSS from any contact with her children or visitation on her property. Dkt. 5-1 at 2.

Wright has pursued alternative avenues for relief, including contacting United States Senator Mark Warner and Virginia Senator Chris Head. Dkt. 3-11; Dkt. 3-12. Wright submitted dozens of child safety reports, presumably to DSS, in the last month. Dkt. 3-3 at 1. She sought a protective order in the Roanoke City Juvenile and Domestic Relations Court, which was dismissed because it was filed in the wrong jurisdiction. Dkt. 3-7. Wright also submitted a report to the civil rights division of the Department of Justice. Dkt. 3-9.

On November 20, 2025, Wright received custody of her nephew, which she argues shows that her home is a safe location. Dkt. 6 at 4; Dkt. 3-4. She argues that due to the abuse her children have suffered, they should be placed in her home, or another "neutral placement" to prevent further abuse and retaliation. Dkt. 3 at 4. However, Wright asserts that her requests for relief neither attempt to change the custody order, nor direct visitation, despite requests for a custody change in each filing.

As redress, Wright seeks only injunctive relief on behalf of herself and her minor children. Wright expressly disclaims that she asks for this court to act as a juvenile and domestic relations court, stating in an additional filing that "[p]laintiff does not seek reunification, custody

4

modification, placement changes, visitation orders, vacatur of any termination-of-parental-rights order, reversal of any adoption decree, or any alteration of parental-status rights." Dkt. 13 at 1. However, her motion for temporary restraining order requests removal of her minor children from John and Jane Doe and placement in neutral custody, prohibition on DSS interference, prohibition on contact with John and Jane Doe, an order for forensic interview of minor children, prevention of coercion of minor children, supervised visit with her children after removal, preservation of DSS communications, and an expedited preliminary injunction hearing. Dkt. 5 at 1. Wright includes in her complaint a request for federal oversight to ensure protection of her children. Dkt. 3 at 4–6.

## II.     Discussion

Wright's pleadings cannot proceed in federal court for multiple reasons. This court is not the proper forum to appeal or attempt to change state custody decisions. Nor does this court oversee state agencies, such as the Virginia Department of Social Services. Wright's claims belong in the appropriate state forum and before the appropriate state court which has jurisdiction over the custody of her children. She is a *pro se* plaintiff and cannot seek to vindicate the interests of others . . . including her own children. Therefore, the Court abstains from hearing this case.

Pursuant to 28 U.S.C. § 1915(e)(2)(B), the court must dismiss a case filed *in forma pauperis* if "at any time [ ] the court determines that ... the action or appeal: (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is frivolous "where it lacks an arguable basis either in law or in fact." *Netizke v. Williams*, 490 U.S. 319, 925 (1989). A claim lacks an arguable basis in law when it is "based on an indisputably meritless legal theory" and

lacks an arguable basis in fact when it describes "fantastic or delusional scenarios." *Guynup v. Cullen*, 2022 WL 3359367, at *2 (W.D. Va. Aug. 15, 2022) (quoting *Netizke*, 490 U.S. at 327-28).

As a *pro se* litigant, Wright's pleadings are afforded liberal construction and held to a less stringent standard than formal pleadings drafted by counsel. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). Liberal construction is particularly important when *pro se* complaints allege civil rights violations. *Smith v. Smith*, 589 F.3d 736, 738 (4th Cir. 2009). However, even a *pro se* filing "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Wright, presumably as the biological mother of her minor children, seeks to protect them from retaliation and abuse. However, a myriad of jurisdictional problems prevents this court from adjudicating Wright's claims. Precedent, judicial economy, and respect for comity and state court expertise dictates that federal courts shall not intervene in purely domestic matters, such as child custody, divorce, and alimony decrees. Further, federal district courts do not exercise jurisdiction over state court proceedings. Because Wright's complaint in essence seeks review of her failed state court child custody claim, this Court must abstain from exercising jurisdiction.

## A. Domestic Relations Exception

Federal courts are courts of limited jurisdiction, and "have an independent obligation to determine whether subject matter jurisdiction exists, even when no party challenges it." *Hertz Corp. v. Friend*, 559 U.S. 77, 94 (2010). Although not a constitutional rule, long-followed precedent establishes that federal courts lack jurisdiction to interfere in state court litigation

involving divorce, alimony, or child custody. *Ankenbrandt v. Richards*, 504 U.S. 689, 702 (1992). In child custody cases, the Supreme Court held that "[a]s to the right to the control and possession of this child, as it is contested by its father and its grandfather, it is one in regard to which neither Congress of the United States nor any authority of the United States has any special jurisdiction." *In re Burrus*, 136 U.S. 586, 594 (1890). Under this "domestic relations exception," federal courts lack jurisdiction when the underlying cause of action is brought under diversity jurisdiction. *Wasserman v. Wasserman*, 671 F.2d 832, 834 (4th Cir. 1982).

The Fourth Circuit has not expressly held the domestic relations jurisdictional bar inapplicable in federal question cases, but it has stated as much in dicta. *United States v. Johnson*, 114 F.3d 476, 481 (4th Cir. 2019); *see also*, *Reale v. Wake County Human Services*, 480 Fed. App'x. 195, *197 (4th Cir. 2012). The Fourth Circuit has cautioned courts, however to "be alert to preclude what are genuinely divorce, alimony, or child custody cases and support cases from creeping around the barrier." *Cole v. Cole*, 633 F.2d 1083, 1088 (4th Cir. 1980) Thus, courts in the Fourth Circuit have abstained from hearing federal question cases that necessarily implicate duties under family relations law. *Doe v. Mast*, 741 F. Supp. 3d 409, 438 (W.D. Va. 2024); *see also Vyas v. Sofinski*, No. 7:23-CV-00075, 2023 WL 3562976, at *3 (W.D. Va. May 19, 2023), *aff'd*, No. 23-6561, 2023 WL 6058479 (4th Cir. Sept. 18, 2023). In *Doe v. Doe*, the Fourth Circuit found that the district court erred in exercising jurisdiction over a federal habeas claim filed to litigate custody of the plaintiff's minor son, even though the claim raised a federal question. 660 F.2d 101, 105–06 (4th Cir. 1981) ("in this, a purely custodial case between private parties . . . the federal courts do not intervene"). Where the substance of the claim litigates in essence divorce, alimony, or child custody, abstention is appropriate. *Id*. at 106.

Although Wright brings her claims for retaliation and violation of due process under 42

7

U.S.C. § 1983, each claim and request for relief seeks to relitigate her children's custody proceedings. A review of the record shows that Wright is presently involved in multiple DSS complaints and investigations regarding the custody of some of her minor children, and she has filed a motion for a protective order in state court. *See* Dkt. 10. Courts in the Fourth Circuit have held that when the substance of litigation is to relitigate child custody proceedings, the district court should decline jurisdiction, even if the claim is raised under federal question jurisdiction. *Cf. Kelser v. Anne Arundel Cnty. Dep't of Soc. Servs.*, 679 F.2d 1092, 1095 (4th Cir. 1982) (holding that dismissal of § 1983 claims was not proper because "a decision now by the district court . . . would not require adjusting family status, establishing familial duties, or determining the breach of such duties"); *see also*, *Johnson v. Byrd*, No. 1:16CV1052, 2016 WL 6839410, at *13 (M.D.N.C. Nov. 21, 2016), *aff'd*, 693 Fed. App'x. 219 (4th Cir. 2017) (holding that the domestic relations exception bars jurisdiction over claims seeking modification of child custody decrees); *Vyas*, 2023 WL 3562976, at *3–4 (holding that domestic relations abstention and the *Rooker-Feldman* doctrine bar litigation of child custody claims brought under § 1983).

Wright's requests for relief can be categorized into two groups: (1) modification of her minor children's custody arrangement[5] and (2) intervention and oversight as to DSS procedures in her case. Although she alleges due process violations and retaliation, the relief requested

---

[5] Wright is not an attorney and brought this action *pro se.* She may not, as a non-attorney parent, represent her minor children in federal court. *Myers v. Loudoun Cnty. Pub. Schools*, 418 F.3d 395, 401 (4th Cir. 2005). In some instances, a parent or guardian may bring an action on behalf of a minor child as "next friend." Relying on reasonable inferences drawn from Wright's filings, it appears that she no longer has custody of several of her biological children. She has not alleged facts to demonstrate that she serves as their legal guardian or retains any parental rights. See Dkt. 6 at 2 (referring to "John Doe" as her child's adoptive father); *Id*. at 3–4 (suggesting a pattern of removal beginning in 2015). Therefore, Wright may not litigate on behalf of her children as a *pro se* litigant, nor has she stated any facts that suggest she may bring a claim on their behalf as "next friend." Thus, any claims brought on behalf of her children must be dismissed.

8

belies the true "core" of her claim: to relitigate a child custody dispute still at issue in juvenile and domestic relations court. Despite narrow construction of the domestic relations exception, courts will decline to exercise jurisdiction when the duty at issue arises solely from family relations law. *Cole*, 633 F.2d at 1088. This case, although couched in federal law, is based entirely on child custody. Heeding the command that district courts "preclude what are genuinely . . . child custody cases," this Court abstains from exercising jurisdiction over Wright's claims.

### B. Rooker – Feldman Abstention

The *Rooker – Feldman* doctrine also counsels that this Court abstain from litigating Wright's claims. Wright's complaint, liberally construed, claims denial of her due process rights and retaliation against her by DSS in the litigation of her custody despite. To remedy this harm, Wright requests injunctive relief specifically court supervision of DSS and placement of her children in her care or other neutral protective care. Dkt. 3 at 6. Because the relief Wright seeks, if granted, would render the state court judgment in her child custody dispute ineffectual in violation of the *Rooker – Feldman* doctrine, the Court must abstain.

The *Rooker – Feldman* doctrine of abstention deprives a district court of subject matter jurisdiction when state-court losers complain of injuries caused by state court judgments and seek rejection of those judgments. *See Rooker v. Fidelity Trust Co.*, 263 U.S. 413 (1923); *District Court of Columbia Court of Appeals v. Feldman*, 460 U.S. 462 (1983). The jurisdictional bar may apply even if a plaintiff frames her claim under § 1983. *See Jordahl v. Democratic Party of Virginia*, 122 F.3d 192, 203 (4th Cir. 1997); *Davis v. Singer*, No. 4:13CV7, 2014 WL 12598862, at *2 (E.D. Va. Aug. 5, 2014) ("a plaintiff may not 'seek reversal of a state court judgment simply by recasting his complaint in the form of a civil rights action pursuant to

9

42 U.S.C. § 1983.'" (internal citations omitted)). To preserve the Supreme Court's exclusive jurisdiction to rule on the validity of state court judgments, the *Rooker – Feldman* doctrine prevents a losing party "from seeking what in substance would be appellate review of the state judgment in a United States district court, based on the losing party's claim that the state judgment itself violates the loser's federal rights." *Skillings v. Knott*, 251 F. Supp. 3d 998, 1003 (E.D. Va. 2017) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

*Rooker – Feldman* abstention extends to ancillary issues that are "inextricably intertwined" with the state court issue. An issue is "inextricably intertwined" if the relief sought requires a federal court to "determine that the state court judgment was erroneously entered or must take action that would render the judgment ineffectual." *Jordahl*, 122 F.3d at 202 (quoting *Ernst v. Child and Youth Servs.*, 108 F.3d 486, 491 (3d Cir. 1997)). When the plaintiff seeks to overturn the result of a state court judgment, the nature of that complaint is an appeal from the state court judgment. *Leonard v. Suthard*, 927 F.2d 168, 170 (4th Cir. 1991). A district court lacks subject matter jurisdiction to hear claims that, however phrased, are by nature appeals from a state court judgment. *See Stratton v. Mecklenburg Cnty. Dept. of Soc. Services*, 521 Fed. App'x. 278, 291 (4th Cir. 2013) (unpublished) ("it is clear that any due process claim is a mere pretext for the real focus of the Complaint, which challenges the validity of records and proceedings of the North Carolina Courts that resulted in termination of the Strattons' parental rights").

In this case, Wright seeks to relitigate her child custody dispute. Despite claims that she does not seek to change the child custody orders, Wright requests that the Court alter her children's custodial placement. Dkt. 3 at 6; Dkt. 5 at 1. The Court is not imbued with the power

to review state court decisions as to child custody. *See Briggman v. Virginia, Dept. of Soc. Services, Div. of Child Support Enf't*, 526 F. Supp. 2d 590, 601 (W.D. Va. 2007) (applying the *Rooker – Feldman* doctrine and abstaining from adjudicating a prior state court decision as to child support). To change child custody judgments decided by a state court would render those judgments ineffectual. *Keen v. Harrison*, No. 7:25-CV-00474, 2025 WL 3045254, at *12 n.11 (W.D. Va. Oct. 30, 2025). Therefore, *Rooker – Feldman* bars this manner of federal interference.

Even if some of Wright's claims do not directly seek to alter the state court custodial determinations of her children, they are inextricably intertwined with those proceedings. Wright claims that DSS procedures in child custody cases have deprived her of due process. *See* Dkt. 10 at 2 (claiming structural bias in DSS case assignment and interviews); Dkt. 5 (requesting that the Court bar DSS and all affiliated individuals from contact with her children). In essence, Wright requests judicial oversight of and interference in the ongoing custody complaints, investigation, and litigation in the state courts involving her children. She asks this court to oversee the custodial decisions and DSS procedures by "order[ing] neutral forensic interviews," "preserv[ing] all DSS records and communications," and "bar[ring] DSS and all affiliated individuals from contact, interference, and influence." Dkt. 5 at 1. The request to enjoin the DSS procedures necessarily asks that this Court declare that the state court judgments as to her custody dispute were wrongly decided. *See Johnson*, 2016 WL 6839410 at *7 (holding that plaintiff's request that the Court enjoin a state court's allegedly unconstitutional proceedings in child custody cases was "inextricably intertwined" with the state court proceedings and therefore barred under *Rooker – Feldman*). Because the object of Wright's complaint is to overturn the state court custodial decisions regarding her children, this Court must abstain.

### III.     Conclusion

Wright's filings are a commendable effort to protect her minor children from abuse. However, this Court shall not exercise jurisdiction over a child custody decree, nor "sit in direct review of state court decisions." *Ankenbrandt*, 504 U.S. at 690; *Jordahl*, 122 F.3d at 199. Plaintiff's motion to proceed *in forma pauperis* (Dkt. 7) is **GRANTED**. Therefore, this Court must abstain from exercising jurisdiction, and Wright's claims are **DISMISSED** without prejudice. Accordingly, Wright's motion for immediate judicial review (Dkt. 4), motion for a temporary restraining order and immediate protective custody (Dkt. 5), motion for expedited review (Dkt. 9), and motion for immediate relief and evidentiary update (Dkt. 10) are **DENIED** as moot.

An appropriate Order shall follow.

It is **SO ORDERED**.

Entered:  December 19, 2025

*Robert S. Ballou*

Robert S. Ballou
United States District Judge